UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BROCKTON RETIREMENT BOARD and, QUINCY RETIREMENT BOARD, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> OPPENHEIMER GLOBAL RESOURCE PRIVATE EQUITY FUND I, L.P., OPPENHEIMER ASSET MANAGEMENT, INC., OPPENHEIMER ALTERNATIVE INVESTMENT MANAGEMENT, LLC, OPPENHEIMER & CO., INC., BRIAN WILLIAMSON AND PATRICK KANE, <br><br> Defendants. | CIVIL ACTION No. 1:12-cv-10552-RWZ |

**MEMORANDUM OF LAW IN SUPPORT OF
OPPENHEIMER DEFENDANTS' AND PATRICK KANE'S
MOTION TO DISMISS AMENDED COMPLAINT**

Michael Blanchard (BBO) #636860
Patrick Strawbridge (BBO) #678274
BINGHAM MCCUTCHEN, LLP
One Federal Street
Boston, MA  02110
(617) 951-8000
michael.blanchard@bingham.com
patrick.strawbridge@bingham.com

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................ 1

ALLEGATIONS AND FACTS PROPERLY BEFORE THE COURT.................................... 2

    A.    Plaintiffs Are Highly Experienced, Sophisticated Investors.................................. 2

    B.    The OGR Fund Is A Fund Of Funds Organized As A Limited Partnership With A General Partner (An LLC) In Exclusive Control Of Its Affairs .............. 3

    C.    OGR Fund's Private Offering Of Limited Partnership Units ............................... 4

    D.    OGR's Disclosures To Its Sophisticated Investors ............................................... 4

    E.    Alleged Misrepresentations ................................................................................ 5

ARGUMENT ................................................................................................ 7

I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF SECTION 12(A)(2) AGAINST ANY DEFENDANT ....................... 7

    A.    Section 12(a)(2) Does Not Provide A Remedy For Claims Based Upon A Private Offering Exempt From Registration Under The 1933 Act .......... 8

    B.    Even if Section 12(a)(2) Applied To A Private Offering, Plaintiffs Fail To Allege Any Material Misstatement By Means Of A "Prospectus"......... 11

    C.    Plaintiffs' Section 12(a)(2) Claim Must Be Dismissed Because The Absence Of Loss Causation Is Apparent On The Face Of The Complaint ........ 12

        1.    Plaintiffs do not, because they cannot, allege any loss ........................... 12

        2.    The alleged misrepresentations cannot be the cause of any hypothetical future losses ....................................... 14

    D.    Plaintiffs Fail To Plead Any Claim For Direct Liability Against Defendants Kane and OAM.................................................... 15

    E.    On Its Face, Plaintiffs' Section 12(a)(2) Claim is Untimely .............................. 17

II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR SECTION 15 LIABILITY ................................................... 18

    A.    Plaintiffs Fail to Allege An Underlying Violation of Section 12 ....................... 18

    B.    Plaintiffs Fail to Allege that Defendants Kane, OAM and OpCo Actually Exercised Control over the OGR Fund............................... 18

CONCLUSION................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps">CASES</span>

*AIG Global Securities Lending Corp. v. Banc of America Sec. LLC*,
    254 F. Supp. 2d 373 (S.D.N.Y. 2003).......................................................................................10

*Aldridge v. A.T. Cross Corp.*,
    284 F.3d 72 (1st Cir. 2002)............................................................................................18, 19

*Amorosa v. AOL Time Warner Inc.*,
    409 Fed. App'x 412 (2d Cir. 2011)................................................................................7, 12

*Anegada Master Fund, Ltd. v. PXRE Group Ltd.*,
    680 F. Supp. 2d 616 (S.D.N.Y. 2010).......................................................................................10

*Aristids Lambergs v. Total Health Systems, Inc.*,
    No. CA 88–0670–Z, 1990 WL 98491 (D. Mass. July 3 1990) (Zobel, J.) .............................16

*Artist Housing Holdings, Inc. v. Davi Skin, Inc.*,
    No. 2:06-cv-893-RLH-LRL, 2007 WL 951947 (D. Nev. Mar. 28, 2007)................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................................................7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*
    493 F.3d 87 (2d Cir. 2007).........................................................................................................14

*Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*,
    129 F.3d 222 (1st Cir. 1997).....................................................................................................17

*Cooperman v. Individual, Inc.*,
    171 F.3d 43 (1st Cir. 1999).......................................................................................................18

*Cooperman v. Individual, Inc.*,
    No. Civ.A. 96–12272–DPW, 1998 WL 953726 (D. Mass. May 27, 1998)
    (Woodlock, J.).............................................................................................................................9

*Gandhi v. Sitara Capital Management, LLC*,
    689 F. Supp. 2d 1004 (N.D. Ill. 2010) .................................................................................10

*Goodwin Properties, LLC v. Acadia Group, Inc.*,
    No. 01-49-P-C, 2001 WL 800064 (D. Me. July 17, 2001) .................................................9, 10

*Gustafson v. Alloyd Co., Inc.*,
    513 U.S. 561 (1995)..................................................................................................................1, 8

*In re Alkermes Sec. Litig.*,
   No. 03-12091-RCL, 2005 WL 2848341 (D. Mass. Oct. 6, 2005) ...........................................14

*In re Bausch & Lomb, Inc. Sec. Litig.*,
   592 F. Supp. 2d 323 (W.D.N.Y. 2008) ...................................................................................14

*In re Broderbund/Learning Co. Sec. Litig.*,
   294 F.3d 1201 (9th Cir. 2002) ...............................................................................................13

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   761 F. Supp. 2d 504 (S.D. Tex. Jan. 6, 2011).........................................................................7

*In re Merrill Lynch & Co.*,
   273 F. Supp. 2d 351 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005) ..............................17

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003).....................................................................................12

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   No. 09 MD 2030 (LAP), __ F. Supp. 2d __, 2012 WL 523553
   (S.D.N.Y. Feb. 15, 2012) ........................................................................................................2

*In re Novell, Inc. S'holder Litig.*,
   No. 10-12076-RWZ, 2012 WL 458500 (D. Mass. Feb. 10, 2012)........................2, 18, 19, 20

*In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*,
   774 F. Supp. 2d 584 (S.D.N.Y. 2011)......................................................................................15

*In re Transkaryotic Therapies, Inc. Sec. Litig.*,
   319 F. Supp. 2d 152 (D. Mass. 2004) .......................................................................................9

*In re Tyco Intern., Ltd.*,
   No. Civ. A. 04-cv-1336-PB, 2007 WL 1687775 (D. N.H. June 11, 2007) ............................18

*In re Van Wagoner Funds, Inc. Secs. Litig.*,
   382 F. Supp. 2d 1173 (N.D. Cal. 2004) ..................................................................................13

*In re Worlds of Wonder Sec. Litig.*,
   721 F. Supp. 1140 (N.D. Cal. 1989) .......................................................................................16

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005)...............................................................................................14, 15

*Lewis v. Fresne*,
   252 F.3d 352 (5th Cir. 2001) ....................................................................................................9

*Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*,
   652 F. Supp. 2d 576 (E.D. Pa. 2009) ........................................................................................9

- iii -

*Maldonado v. Dominguez,*
   137 F.3d 1 (1st Cir. 1998) ..................................................................................7, 9

*Maldonado v. Fontanes,*
   568 F.3d 263 (1st Cir. 2009) ....................................................................................7

*Pacific Dunlop Holdings Inc. v. Allen & Co. Inc.,*
   993 F.2d 578 (7th Cir. 1993) ..................................................................................11

*Pinter v. Dahl,*
   486 U.S. 622 (1988)................................................................................................15

*SEC v. Ralston Purina Co.,*
   346 U.S. 119 (1953)..................................................................................................3

*SEC v. Tambone,*
   597 F.3d 436 (1st Cir. 2010) (en banc) ....................................................................7

*Slavin v. Morgan Stanley & Co.,*
   791 F. Supp. 327 (D. Mass. 1992) ..........................................................................17

*Stumpf v. Garvey,*
   No. 03-CV-1352-PB, 2006 WL 39237 (D. N.H. Jan. 6, 2006) ...............................12

*Vannest v. Sage, Rutty & Co., Inc.,*
   960 F. Supp. 651 (W.D.N.Y. 1997) .....................................................................9, 10

*Whirlpool Financial Corp. v. GN Holdings, Inc.,*
   67 F.3d 605 (7th Cir. 1995) ......................................................................................9

*Yung v. Lee,*
   432 F.3d 142 (2d Cir. 2005)................................................................................9, 12

**FEDERAL STATUTES**

15 U.S.C.
   § 77b(a)(10) .......................................................................................................11, 12
   § 77d(a)(2) ...............................................................................................................10
   § 77m.......................................................................................................................17
   § 77o..................................................................................................1, 2, 18, 20
   § 80a-2(a)(51) ...........................................................................................................2
   § 77*l*(a)(2) ......................................................................................................8, 11, 15

Investment Company Act of 1940 .................................................................................4

Securities Act of 1933
    § 12(a)(2) ............................................................................................................... passim
    § 2(a)(10) ....................................................................................................................11
    § 4(2) ...................................................................................................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P.
    12(b)(6) .................................................................................................................1, 17

Defendants Oppenheimer Global Resource Private Equity Fund I, L.P., Oppenheimer Asset Management, Inc., Oppenheimer Alternative Investment Management, LLC, and Oppenheimer & Co., Inc. (collectively, the "Oppenheimer Defendants") and Defendant Patrick Kane respectfully submit this Memorandum of Law In Support of their Motion to Dismiss the purported Amended Class Action Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Preliminary Statement

Section 12(a)(2) of the Securities Act of 1933 ("1933 Act") permits private causes of action for material misrepresentations or omissions in prospectuses describing public offerings of securities. The United States Supreme Court held in *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995) that no Section 12(a)(2) claim exists in connection with alleged misrepresentations or omissions concerning private offerings. Here, the Complaint specifically alleges that the securities at issue "were offered privately pursuant to an exemption from registration under Section 4(2)" of the 1933 Act. Compl. ¶ 47. In this one respect, the Plaintiffs are absolutely correct, and accordingly, their Complaint must be dismissed, as a matter of law.

Even if *Gustafson* was not controlling (though it is) the Complaint would still fail to state any 1933 Act claim, for several, independently dispositive reasons. First, the Complaint fails to allege any material misstatements communicated "by means of a prospectus." Statements in other documents which do not "offer" securities simply are non-actionable under Section 12, yet that is all that the Complaint challenges. Second, the Complaint identifies no loss, nor could it given that Plaintiffs' illiquid investments have not concluded. To the extent any hypothetical loss (or gain) may occur – mere conjecture at this point – it will be long in the future. *A fortiori,* Plaintiffs cannot establish loss causation. Third, because Plaintiffs fail to plead a primary violation of the 1933 Act, the Section 15 claims for control person liability fail as to all

Defendants.   Separately, the Section 15 claims against Defendants Kane, Oppenheimer Asset Management, Inc., and Oppenheimer & Co., Inc. fail for lack of any factual allegations of their control over any person or entity alleged to have committed a primary Section 12 violation.

## ALLEGATIONS AND
## FACTS PROPERLY BEFORE THE COURT[1]

### A.    Plaintiffs Are Highly Experienced, Sophisticated Investors

The named Plaintiffs are municipal retirement boards that manage investments for the cities of Brockton and Quincy, Massachusetts.  Compl. ¶¶ 16-17.  Both named Plaintiffs manage investment portfolios of hundreds of millions of dollars.[2]  Plaintiffs are both "Accredited Investors" under Regulation D of the 1933 Act, *see* 17 C.F.R. § 230.501(a), and "Qualified Purchasers" under the Investment Company Act, 15 U.S.C. § 80a-2(a)(51).  *See* Compl. ¶ 47. These qualifications were required for all investors in the OGR Fund.  *Id.*  Plaintiffs thus admit to possessing a "more sophisticated understanding of risks of the investments [they] make[] and [are] better able to protect [themselves]."  *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030 (LAP), __ F. Supp. 2d __, 2012 WL 523553, at *8 (S.D.N.Y. Feb. 15, 2012) (observing presumptive sophistication for Qualified Purchasers).  Plaintiffs' sophistication and experience distinguishes them from the class of persons intended to be protected by the 1933 Act, since, in the words of the United States Supreme Court, "[a]n offering to those who are

---

[1] As is appropriate in a motion to dismiss, the facts presented here are drawn from the Complaint, documents referenced in the Complaint, and other matters of public record of which judicial notice may be taken.  *See In re Novell, Inc. S'holder Litig.*, No. 10-12076-RWZ, 2012 WL 458500, at *1 (D. Mass. Feb. 10, 2012) (at motion to dismiss stage, court may consider "documents incorporated by reference [in the Complaint], matters susceptible to judicial notice, and matters of public record . . . .").   The facts drawn from the Complaint are assumed to be true only for purposes of this motion to dismiss, and the defendants reserve all rights to contest such facts should the Complaint survive.

[2] For example, the Brockton Retirement Board's assets were valued at more than $392 million in 2008 (the beginning of the investment period at issue in this case).  *See* Ex. A to Declaration of Patrick Strawbridge ("Strawbridge Decl."), at 1.  The Quincy Retirement Board's assets were valued at more than $307 million as of January 1, 2007.  *See* Strawbridge Decl., Ex. B., at 5.

shown to be able to fend for themselves" is exempt from the Act's requirements.  *SEC v. Ralston Purina Co.*, 346 U.S. 119, 125 (1953).

**B.     The OGR Fund Is A Fund Of Funds Organized As A Limited Partnership With A General Partner (An LLC) In Exclusive Control Of Its Affairs.**

Oppenheimer Global Resource Private Equity Fund I, L.P. ("OGR Fund" or "OGR"), is a limited partnership organized in 2008 under the laws of Delaware.  Compl. ¶ 18.   The OGR Fund is "a fund of private equity funds …."  *Id.; see also* OGR Fund Private Placement Memorandum ("PPM"), Ex. C to Strawbridge Decl., at 1.  The general partner in the OGR Fund was Oppenheimer Alternative Investment Management, LLC ("OAIM"), organized under the laws of Delaware.   Compl. ¶ 20; *see also* PPM, at 36.   Under the OGR Fund's Limited Partnership Agreements, either Onshore ("Onshore LPA") or Offshore ("Offshore LPA"),[3] "[t]he overall management and control of the business and affairs of the Partnership shall be vested exclusively in the General Partner."  *See* Onshore LPA, Ex. D. to Strawbridge Decl, at § 5.1; Offshore LPA, Ex. E to Strawbridge Decl., at § 4.1.[4]

Defendant Oppenheimer Asset Management, Inc. ("OAM"), a New York corporation, served as the Sponsor of the OGR Fund.  Compl. ¶ 19.  Defendant Oppenheimer & Co. Inc. ("OpCo") was the Fund's administrator and earned a management fee in that role.  Compl. ¶ 21.  Defendant Patrick Kane was "Senior Managing Director of the OGR Fund."  *Id.* ¶ 25.  The

---

[3] Brockton's investment in OGR Fund was through the Offshore LPA; Quincy's was through the Onshore LPA.  *See* City of Brockton Retirement System Subscription Package, Ex. F to Strawbridge Decl.; Quincy Retirement System Subscription Package, Ex. G to Strawbridge Decl.  Although the relevant disclosures and fund features that defeat all of Plaintiffs' claims are identical, Brockton's failure to name the Offshore Fund through which it holds its units is an additional defect in its claims against the Onshore Fund.

[4] For the convenience of the Court, relevant excerpts of the Onshore and Offshore LPA are included as Exhibits D and E to the Strawbridge Declaration.  Complete copies of the Limited Partnership Agreements can be promptly furnished at the Court's request.

Complaint, however does not allege any facts plausibly suggesting that OAM, OpCo, or Mr. Kane exercised any control over the operations of the OGR Fund.

### C.     OGR Fund's Private Offering Of Limited Partnership Units

The Complaint alleges Plaintiffs purchased Limited Partnership Units in the OGR Fund that "were not registered under applicable securities laws and were offered privately pursuant to an exemption from registration under Section 4(2) of the Securities Act of 1933 . . . ." Compl. ¶ 47.  As stated in the PPM:  "The Units are offered pursuant to an exemption from registration under Section 4(2) of the Securities Act, Regulation D promulgated thereunder and applicable state securities ("blue sky") laws."  PPM, at "Important Considerations."  Accordingly, all "[i]nvestors in the fund were require[d] to be 'accredited investors' as defined under Regulation D [concerning exemption from registration of securities] and 'qualified purchasers' as defined under the Investment Company Act of 1940, as amended."  Compl. ¶ 47.  Plaintiffs concede that they met these requirements.  *See id.*; Strawbridge Decl., Ex. F., at 27-28; Ex. G, at 26-27.

### D.     OGR's Disclosures To Its Sophisticated Investors

In connection with its private offering, OGR provided its sophisticated investors with numerous disclosures about risks, valuation, and the liquidity (or lack thereof) of the OGR Fund and its holdings.  For example, as disclosed in the PPM:

- ▪ "**The General Partner, in its sole discretion, will value the assets of the Fund based upon available relevant information**. The General Partner expects that **in most cases** it will value the Underlying Funds in accordance with the valuations reported to it by the Managers of the Underlying Funds, although **the General Partner will have discretion to use other valuation methods or to engage an independent valuation consultant.**" PPM, at 51 (emphasis added).

- ▪ "The Fund's investments in Underlying Funds … **will be difficult to value** because it may be relatively difficult for the Fund to obtain reliable valuation information . . . . **In most cases**, the Fund will rely on the Underlying Funds' valuations of Portfolio Companies. **Prospective investors should be aware that uncertain valuations as to the assets held by the Fund could adversely impact the returns of the Fund**." PPM, at 65 (emphasis added).

- 4 -

- ▪ "Generally, the Fund's investments will be **long-term and illiquid**. Thus, **Units are subject to strict restrictions on transfer and withdrawals**, which is subject to the discretionary consent of the General Partner. Prospective investors in the Fund are required to represent that they have acquired their Units in the Fund for investment purposes only, not for potential resale or distribution. Due to the illiquid nature of the Fund, **Limited Partners of the Fund are not permitted to make withdrawals from the Fund.**" PPM, at 68 (emphasis added).

- ▪ "**Limited Partners will not be permitted to transfer their Units without the prior written consent of the General Partner**, which consent may be withheld for any reason, conditioned or delayed in the sole discretion of the General Partner. . . . **There is currently no market for the Units** and it is not contemplated that one will develop. **Units should only be acquired by investors who are able to commit their funds for an indefinite period of time.**" *Id.* (emphasis added).

Investors in OGR executed subscription agreements representing that they had "received, carefully read and fully underst[ood]" the PPM and Limited Partnership Agreement, Strawbridge Decl., Ex. F & G at § 2.1; that they understood "that an investment in the . . . Fund is an illiquid investment and that the Investor must be prepared to hold its investment in the . . . Fund for an indefinite period of time"; *id.* at § 2.2(c); and that the offer and sale of the Units were "being made privately by the . . . Fund pursuant to an exemption from registration under Section 4(2) of the Securities Act, Regulation D," *id.* at § 2.3(a)(i).  Plaintiffs themselves allege that "[t]he OGR Fund is a closed-end private equity fund-of-funds vehicle with a 10-plus year fund life" and that "[a]s such, limited investors have no mechanism by which to obtain liquidity for their investment (whether allocated to actual investments or awaiting a capital call) prior to the Fund's general liquidation." Compl. ¶ 48 (emphasis omitted).

### E.      Alleged Misrepresentations

Plaintiffs assert misleading statements about the value of the OGR Fund's holdings of a single asset, Cartesian Investor-A ("Cartesian"), an investment vehicle that, in turn, held securities issued by S.C. Fondul Proprietatea SAS ("Fondul").  Compl. ¶¶ 29, 51-53.  Plaintiffs allege that "[t]he OGR Fund's holdings in Cartesian/Fondul were initially valued based upon the

underlying fund manager's estimated value, which was based upon the 'at cost' valuation" at an amount less than the par value of the Fondul securities.  *Id.* ¶¶ 54-55.  Plaintiffs further allege that "no later than October 29, 2009," Defendant Williamson implemented a "Revised Valuation Methodology" that valued the Cartesian holding based on the par value of the underlying Fondul shares.  *Id.* ¶ 55.

Plaintiffs allege in conclusory fashion that the "Solicitation Documents state that asset values are to be based upon the valuation of the underlying fund's managers and/or upon actual trading value," *see* Compl. ¶ 60, overlooking the PPM's express disclosure that "[t]he General Partner, in its sole discretion, will value the assets of the Fund based upon available relevant information" and that "in **most** cases" (not all cases) it would rely on the underlying fund manager's value*, see* PPM, at 51 (emphasis added); *see also* Onshore LPA, § 7.2 (similar); Offshore LPA, § 6.2 (similar).

Plaintiffs further allege that one investor was told, in a "response" dated October 29, 2009, that OGR "require[s] our underlying managers to utilize third party valuation firms that provide valuations of the respective portfolios in accordance with FASB 157," and that FASB 157 requires that a "quoted price in an active market provides the most reliable evidence of fair value and shall be used to measure fair value whenever available."  Compl. ¶¶ 68-89 (emphasis added).  Plaintiffs allege that a chart included with the October 29 investor response indicated an unrealized value of Cartesian that was based on Fondul's par value, and thus was inconsistent with a footnote suggesting that all of the unrealized values in the chart were "based on the underlying managers' estimated values as of June 30, 2009."  *Id.* ¶¶ 71-73.  Plaintiffs allege that similar versions of this chart were sent to prospective and current investors in the fund on three

occasions during 2009 and 2010.  *Id.* ¶¶ 74-88.  Plaintiffs do not, however, allege that these statements were in a "prospectus," or were set forth in communications concerning a prospectus.

## ARGUMENT

In judging the sufficiency of the Complaint, Plaintiffs must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court need not accept "'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

As explained below, Plaintiffs fail to allege any plausible claim for relief, and accordingly, this motion should be allowed.

## I.  THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF SECTION 12(A)(2) AGAINST ANY DEFENDANT

Three independently dispositive principles require dismissal of the Complaint.  First, Section 12(a)(2) imposes potential liability only in connection with an initial public offering of securities.  *Maldonado v. Dominguez*, 137 F.3d 1, 8 (1st Cir. 1998).  Second, Section 12(a)(2) liability is generally limited to false or misleading statements made in a prospectus.  *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 761 F. Supp. 2d 504, 571 (S.D. Tex. Jan. 6, 2011).  Third, while loss causation need not be alleged in a 1933 Act case, if the absence of loss causation is "apparent from the face of the complaint . . . [i]t is . . . a proper basis on which to dismiss the claim." *Amorosa v. AOL Time Warner Inc.*, 409 Fed. App'x 412, 417 (2d Cir. 2011).  The Complaint here fails to state any claim under Section 12(a)(2) in light of each of the foregoing

principles: (i) the Complaint alleges that OGR was a private offering; (ii) the Complaint fails to plead a material misrepresentation or omission in a "prospectus"; and (iii) "negative causation" is established on the face of the Complaint.

In addition, the Complaint's allegations make evident that Plaintiffs' Section 12(a)(2) claim is untimely.   And finally, Plaintiffs fail to allege facts plausibly suggesting that defendants OAM or Kane solicited Plaintiffs' purchases of units and accordingly, the Section 12(a)(2) claims must be dismissed as against defendants OAM and Kane.

### A.    Section 12(a)(2) Does Not Provide A Remedy For Claims Based Upon A Private Offering Exempt From Registration Under The 1933 Act.

In *Gustafson*, the Supreme Court extensively reviewed the meaning of the 1933 Act provisions creating civil liability for one who "sells a security . . . by means of a prospectus or oral communication[.]"  15 U.S.C. § 77*l*(a)(2).  After a comprehensive analysis of text, structure, and history of the Act's key terms, the Court concluded that "the liability imposed by § 12(2)[5] cannot attach unless there is an obligation to distribute the prospectus in the first place (or unless there is an exemption)."  *Gustafson*, 513 U.S. at 571. The Court therefore held that "the word 'prospectus' is a term of art referring to a document that describes a **public offering** of securities by an issuer or controlling shareholder."  *Id.* at 584 (emphasis added).

Following *Gustafson*, the First Circuit and the district courts within have consistently recognized that Section 12(a)(2) claims erroneously brought in connection with private offerings must be dismissed.   Thus, in *Maldonado*, the First Circuit acknowledged that *Gustafson* "conclusively decided that section 12(2) applies exclusively to 'initial public offerings'" and affirmed an order dismissing a claim that arose from the private placement of stock in a new

---

[5] Section 12(a)(2) was initially enacted as subsection 12(2); although the numbering of the subsections has changed, the relevant text of the statute has not.

A/75117720.4

corporation.  137 F.3d at 8.  Similarly, in *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 319 F. Supp. 2d 152 (D. Mass. 2004)*, this Court, citing *Gustafson* and *Maldonado,* dismissed Section 12(a)(2) claims in a securities class action based upon sales that were not part of an initial public offering.  *Id.* at 158 (noting that under *Gustafson* and *Maldonado*, Section 12(a)(2) "applies exclusively to 'initial public offerings'"); *see also Cooperman v. Individual, Inc.*, No. Civ.A. 96–12272–DPW, 1998 WL 953726 (D. Mass. May 27, 1998) (Woodlock, J.) ("By limiting § 12(2) actions to initial public offerings, the Supreme Court held that no plaintiff may bring suit—i.e., that there simply is no cause of action—under § 12(2) based upon misrepresentations in other types of transactions"); *Goodwin Properties, LLC v. Acadia Group*, *Inc*., No. 01-49-P-C, 2001 WL 800064, *9-*10 (D. Me. July 17, 2001) (recommendation of Cohen, M.J.) ("The First Circuit in *Maldonado* stated that a claim under section 12(2) may be dismissed if the pleadings establish that the stock at issue was placed privately.")  Courts outside the First Circuit concur: Section 12(a)(2) claims based upon private offerings must be dismissed.  *See, e.g., Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005); *Lewis v. Fresne,* 252 F.3d 352, 357 (5th Cir. 2001); *Whirlpool Financial Corp. v. GN Holdings, Inc*., 67 F.3d 605, 609 n.2 (7th Cir. 1995); *Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co*., 652 F. Supp. 2d 576, 596-98 (E.D. Pa. 2009); *Artist Housing Holdings, Inc. v. Davi Skin, Inc*., No. 2:06-cv-893-RLH-LRL, 2007 WL 951947, at *2, (D. Nev. Mar. 28, 2007).

Accordingly, when a complaint specifically alleges that the offering in question was a "private offering" exempt from registration under Section 4(2) – as Plaintiffs' Complaint does here -- *Gustafson* compels the dismissal of the 12(a)(2) claim.  In *Vannest v. Sage, Rutty & Co., Inc*., 960 F. Supp. 651 (W.D.N.Y. 1997), for instance, the private placement memorandum described the offering as exempt under Section 4(2), and the plaintiffs did "not dispute that the

offering was made pursuant to a private placement memorandum." *Id.* at 655. "Because Section 12(2) is inapplicable to private offerings under *Gustafson,*" the Court dismissed the claim. *Id.*; *see also Gandhi v. Sitara Capital Management, LLC*, 689 F. Supp. 2d 1004, 1009-10 (N.D. Ill. 2010) (dismissing Section 12(a)(2) claims that plaintiffs conceded were unrelated to a public offering); *Anegada Master Fund, Ltd. v. PXRE Group Ltd*., 680 F. Supp. 2d 616, 621 (S.D.N.Y. 2010) (dismissing section 12(a)(2) claim where, on the face of the complaint, plaintiffs demonstrated that the shares were part of a private placement); *AIG Global Securities Lending Corp. v. Banc of America Sec. LLC*, 254 F. Supp. 2d 373, 389 (S.D.N.Y. 2003) (dismissing Section 12(a)(2) claims where "[t]here is no dispute that [the securities] were sold through private offerings"); *Goodwin Properties LLC,* 2001 WL 800064, at *10 (dismissing Section 12(a)(2) claim because pleadings "establish[ed] that the stock at issue was placed privately.").

Here, the Plaintiffs specifically allege that the OGR Fund's "Limited Partnership Units were not registered under applicable securities laws and were offered privately pursuant to an exemption from registration under Section 4(2) of the Securities Act of 1933 . . . ." Compl. ¶ 47. The PPM confirms that Plaintiffs' allegation is entirely correct: "the Fund will not issue registered securities" and that "[t]he Units are offered pursuant to an exemption from registration under Section 4(2) of the Securities Act, Regulation D promulgated thereunder and applicable state securities ("blue sky") laws." PPM, at "Important Considerations."[6]   The Section 12(a)(2) claim must be dismissed.

---

[6] Notably, Section 4(2) expressly applies only to "transactions by an issuer not involving any public offering."  15 U.S.C. § 77d(a)(2) (emphasis added).

A/75117720.4

**B.      Even if Section 12(a)(2) Applied To A Private Offering, Plaintiffs
Fail To Allege Any Material Misstatement By Means Of A "Prospectus"**

Even if *Gustafson* did not require dismissal of the Plaintiffs' Section 12(a)(2) claim --
which it indisputably does – the claim would still fail.   Assuming *arguendo* that a Section
12(a)(2) claim could arise from a non-public offering, the misrepresentation must still be
communicated "by means of a prospectus[.]"   15 U.S.C. § 77*l*(a)(2).   Plaintiffs have failed to
allege any misstatement appearing in (or about) a prospectus.   Indeed, the word "prospectus"
does not even appear in the Complaint.

The definition of "prospectus" for purposes of the 1933 Act is provided in Section
2(a)(10):  "any prospectus, notice, circular, advertisement, letter, or communication, written or
by radio or television, **which offers any security for sale or confirms the sale of any
security**") 15 U.S.C. § 77b(a)(10) (emphasis added).   With respect to the OGR Fund, the only
materials that could conceivably fit this definition is the PPM and related subscription
agreements.   *See, e.g.,* Compl. ¶ 49 (alleging that "Limited Partnership Units in the OGR Fund
were offered to investors through the OGR PPM"); *cf. Pacific Dunlop Holdings Inc. v. Allen &
Co. Inc*., 993 F.2d 578, 583 (7th Cir. 1993) (holding, pre-*Gustafson*¸ that under section 2(a)(10),
"a prospectus thus includes a contract of sale or any other kind of written communication that
disposes of a security").

Plaintiffs' allegations of purportedly false or misleading statements focus on documents
other than the PPM, *i.e.* the "October 29 investor response" and quarterly reports.   *See* Compl. ¶¶
68-88.   Plaintiffs do not (and cannot) allege that these documents "offer[ed] any security for sale
or confirm[ed] the sale of any security" within the definition of "prospectus" set forth in Section

2(a)(10) of the Act.  15 U.S.C. § 77b(a)(10).[7]  Accordingly, the Complaint fails to set forth any

basis for a Section 12(a)(2) claim, even if *Gustafson* did not control (which it does).

### C.   Plaintiffs' Section 12(a)(2) Claim Must Be Dismissed Because The Absence Of Loss Causation Is Apparent On The Face Of The Complaint.

Even if Section 12(a)(2) could provide a remedy to Plaintiffs, the claim still must fail

because the absence of loss causation is apparent on the face of the Complaint.  In 1933 Act

cases, the absence of loss causation is an affirmative defense that Congress provided via the

Private Securities Litigation Reform Act, passed to help curb abusive securities litigation.  *See*

*Yung v. Lee*, 432 F.3d 142, 146 n.3 (2d Cir. 2005).  While "the absence of loss causation is an

affirmative defense," if it is "apparent from the face of the complaint . . . [i]t is . . . a proper basis

on which to dismiss the claim."  *Amorosa v. AOL Time Warner Inc.*, 409 Fed. App'x 412, 417

(2d Cir. 2011); *see also Stumpf v. Garvey*, No. 03-CV-1352-PB,  2006 WL 39237, at *1-*2 (D.

N.H. Jan. 6, 2006) (dismissing Section 11 claim where "the affirmative defense of no loss

causation is readily established on the face of the complaint"); *In re Merrill Lynch & Co., Inc.*

*Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 253-54 (S.D.N.Y. 2003) (similar).

As explained below, the absence of loss causation is apparent on the face of the

Complaint, and accordingly, dismissal is appropriate for this reason too.

### 1.   Plaintiffs do not, because they cannot, allege any loss.

Plaintiffs' shares in the OGR Fund are illiquid, non-traded securities which have not yet

concluded as investments.  The PPM makes clear that Plaintiffs' investment in OGR is illiquid in

nature and indefinite in duration, *see* PPM, at 41, 52, 68, and Plaintiffs even allege that the OGR

---

[7] The only challenge Plaintiffs assert regarding the PPM is based upon selective quotations that carefully omit the PPM's express disclosures, which refute Plaintiffs' assertions.  Plaintiffs claim, for instance, that "the OGR PPM purports that it will 'rely on the Underlying Fund's valuation of portfolio companies and such [private equity] investments.'"  Compl. ¶ 66 (emphasis omitted). The PPM, however, expressly states that "the General Partner will have discretion to use other valuation methods …."  PPM, at 51.

Fund "is a vehicle with a 10-plus year fund life."  Compl. ¶ 48.  Before the Fund concludes, it is impossible to determine whether investors will experience gains or suffer a loss.  Whether the Plaintiffs will, in the future, realize gains or losses on their investment, is not presently knowable.

It is unsurprising then that Plaintiffs fail to allege that they suffered any loss.  Nowhere does the Complaint allege that Plaintiffs have disposed of their units for less than they paid for them, nor could Plaintiffs so allege, as the units must be held for years to come.  And nowhere do Plaintiffs allege that the OGR Fund has declined in value.  To the contrary, Plaintiffs allege that OGR's assets have <u>appreciated</u> in value since inception, acknowledging (as they must) that "the fund's performance" is in "the single digits," Compl. ¶ 92,[8] – an accretion in value since inception.[9]  In a word, Plaintiffs allege no loss.  Where no loss is even alleged, Plaintiffs obviously cannot establish that an alleged misrepresentation caused a loss.  *See In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1205 (9th Cir. 2002) (affirming dismissal of 1933 Act claims, because "there can be no recovery unless the purchaser has suffered a loss" and plaintiff disposed of his stock "for an amount greater than the purchase price"); *In re Van Wagoner Funds, Inc. Secs. Litig.*, 382 F. Supp. 2d 1173, 1183 (N.D. Cal. 2004) (dismissing 1933 Act claims where "the Court finds there is no decline in value and thus no loss causation pled");

---

[8] Plaintiffs describe this as "negative performance on a net basis," a misleading phrase that refers to the OGR Fund's decline from its <u>peak value</u>, not OGR's value relative to <u>inception</u>.  *See* Compl. ¶ 92.

[9] Indeed, according to the Complaint, Cartesian invests exclusively in Fondul, and Fondul currently trades on the Bucharest Stock Exchange at a price in excess of the weighted average price OGR paid Cartesian to invest in Fondul.  *See* Compl. ¶ 53 (describing OGR's $7.0 million commitment to Cartesian in 2008); *id.* at ¶ 52 (detailing over-the-counter trading prices for Fondul for 2008-2009 of 0.10-0.38 RON); *id.* at ¶ 93 (stating that Fondul traded at 0.456 RON on date of Complaint); *id.* at ¶ 61 (describing OGR's $2.6 million investment Cartesian in 2010, which resulted in Cartesian acquiring Fondul shares at "nearly 0.50 RON" per share).  Even assuming (most favorably for Plaintiffs) that Cartesian used OGR's $7 million investment to acquire shares in Fondul at the highest trading price in 2008 or 2009, OGR's indirect investment in Fondul has appreciated more than 10%.  Thus, based on the Complaint's allegations, OGR's gain of at least 20.0% on its 2008 investment in Cartesian swamps its 8.8% loss on its smaller investment in 2010.

*In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 347 (W.D.N.Y. 2008) (dismissing 1934 Act claims for failure to plead loss causation where defendant's "share price actually rose steadily" following disclosures).

At most, the Complaint alleges that Plaintiffs were induced by alleged misrepresentations into investing in the OGR Fund. But this only alleges transaction causation – that is, "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005) (citation omitted). "It is long settled that a securities-fraud plaintiff 'must prove both transaction and loss causation.'" *Id.* at 172 (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994)).

The absence of loss causation is apparent on the face of the Complaint and, accordingly, the Section 12(a)(2) claim should be dismissed.

### 2.    The alleged misrepresentations cannot be the cause of any hypothetical future losses.

Loss causation requires "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell*, 396 F.3d at 173; *see also In re Alkermes Sec. Litig.*, No. 03-12091-RCL, 2005 WL 2848341, at *11-12 (D. Mass. Oct. 6, 2005). Alternatively, loss causation may exist if "the loss was foreseeable and caused by the materialization of the risk concealed . . . ." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.* 493 F.3d 87, 107 (2d Cir. 2007). The Plaintiffs have not and cannot satisfy either avenue of loss causation.

OGR shares are not traded on any market. Their value depends on the value of OGR's investments in underlying funds, relative to OGR's initial cost of investment. *See* PPM, at 10, 44-46 (detailing cash distribution policy). Because the value of the OGR units is a function of

the value of underlying assets, rather than a non-existent market for OGR, any corrective disclosure regarding OGR's valuation policy cannot affect the value of the units.

Accordingly, Plaintiffs have not alleged, and cannot allege, that a "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell*, 396 F.3d at 173.  Nor can Plaintiffs claim that any misstatement or omission caused the value of the shares to depreciate.  *See In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 596 (S.D.N.Y. 2011) (where the Net Asset Value of a mutual fund "does not react to . . . any misstatements in the Fund's prospectus, no connection between the alleged material misstatement and a diminution in the security's value has been or could be alleged").   To the extent the Plaintiffs experience hypothetical losses in the future, those losses cannot be caused by alleged misrepresentations about how OGR values assets, it will be due to the future value of the assets themselves.   Loss causation cannot be satisfied.

> **D.     Plaintiffs Fail To Plead Any Claim For Direct
>                Liability Against Defendants Kane and OAM.**

Plaintiffs purport to assert direct liability claims under Section 12(a)(2) against all Defendants.  *See* Compl. ¶¶ 96-102.   In addition to the reasons set forth above, the Section 12(a)(2) claims against Defendants Kane and OAM should be dismissed because the Complaint is devoid of any factual allegation that these Defendants sold or solicited the sale of units to Plaintiffs.

Section 12(a)(2) imposes liability on any person who "offers or sells" a security.  *See* 15 U.S.C. § 77*l*(a)(2).   Direct liability under this section requires a defendant either to actually transfer title to the security or successfully solicit the purchase of the security.  *Pinter v. Dahl*, 486 U.S. 622, 645-47 (1988).   "Section 12(2) imposes no primary liability on collateral

- 15 -

participants in the sale." *Aristids Lambergs v. Total Health Systems, Inc.*, No. CA 88–0670–Z, 1990 WL 98491, at *2 (D. Mass. July 3, 1990) (Zobel, J.) (citing *Loan v. Federal Deposit Ins. Corp.*, 717 F. Supp. 964, 968 (D. Mass. 1989); *see also In re Worlds of Wonder Sec. Litig.*, 721 F. Supp. 1140, 1148 (N.D. Cal. 1989) (dismissing Section 12(2) claim against individual who was not alleged to be "more than a collateral participant in these sales").

Plaintiffs do not allege that Kane or OAM passed title. Nor could they; the PPM, the Limited Partnership Agreements, and the subscription documents that Plaintiffs executed made clear that OAIM was the General Partner of the OGR Fund. *See* Strawbridge Decl., Ex. F & G (executed subscription agreements), at 1; PPM, at 36; Onshore LPA, § 5.1 ("[t]he overall management and control of the business and affairs of the Partnership shall be vested exclusively in the General Partner"); Offshore LPA, § 4.1 (same). Further, the Complaint is devoid of any allegations of fact suggesting that Kane or OAM solicited the purchase of the OGR Fund. Indeed, with respect to Kane, Plaintiffs allege only that he was identified as a "point of contact" for inquiries about the fund, *id.* ¶ 24, and do not allege that Kane actively participated in any of the solicitations or allegedly misleading practices set forth in ¶¶ 57-91. Plaintiffs' remaining general allegations – that all Defendants "solicited" the sale of the OGR Fund, *id.* ¶ 9, and that Kane "actively and directly solicited investors," *id.* ¶ 50 – are plainly insufficient legal conclusions. *See Aristids Lambergs*, 1990 WL 98491, at *2 ("Although Aristids alleges that defendant Bear Stearns "solicited" the purchase of Total Health stock, such a conclusory statement is insufficient where the facts alleged nowhere indicate that Bear Stearns … played any role in the sale."). Because Plaintiffs have failed to plead factual allegations of sufficient participation by Kane or OAM in the sales at issue, the Section 12(a)(2) claim against them should be dismissed.

E.      **On Its Face, Plaintiffs' Section 12(a)(2) Claim is Untimely.**

An action under Section 12(a)(2) is subject to a one-year statute of limitations, which begins to run "after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence[.]"  15 U.S.C. § 77m (emphasis added); *see also Slavin v. Morgan Stanley & Co.*, 791 F. Supp. 327, 330 (D. Mass. 1992) (noting that limitations period begins to run when a plaintiff is presented with "sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved in the sale") (quotation marks omitted).   A claim may be dismissed under Rule 12(b)(6) on statute-of-limitations grounds when the facts essential to the defense "are apparent from the face of the complaint, the documents cited therein, and other public documents."  *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 378-79 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005).

In this case, Plaintiffs should have discovered the facts underlying their alleged claims no later than January 25, 2011, when Fondul was publicly listed on the Bucharest Stock Exchange at a value well under the 1.00 RON par value -- an event Plaintiffs specifically allege in the Complaint.  *See* Compl. ¶ 79.[10]  This disparity was more than sufficient to put Plaintiffs on inquiry notice.  *See, e.g.,Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 129 F.3d 222, 225 (1st Cir. 1997) (noting that decline in value of 10% was sufficient to alert investor that the description of the securities may have been inaccurate or dishonest).  By the

---

[10] The Bucharest Stock Exchange provides extensive information about Fondul's trading price, in English, at its website, http://www.bvb.ro/

time Plaintiffs asserted their claims in March 2012, the one-year limitations period had long since expired.[11]

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR SECTION 15 LIABILITY

The Complaint alleges that all the defendants are liable as control persons under Section 15 of the 1933 Act, 15 U.S.C. § 77o.  *See* Compl. ¶¶ 103-108.  In order to assert a claim for secondary liability under Section 15,[12] the plaintiffs must allege: (1) an underlying violation by the controlled person or entity and (2) that the defendants controlled the violator.  *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 84-85 (1st Cir. 2002); *In re Novell, Inc. Shareholder Litig.*, No. Civ. A. 10-12076-RWZ, 2012 WL 458500, at *5 (D. Mass. Feb. 10, 2012).  The Complaint falls short of both essential elements.

### A.   Plaintiffs Fail to Allege An Underlying Violation of Section 12(a)(2)

As noted above, the Plaintiffs have failed to allege a violation of Section 12(a)(2) for several reasons, including the fact that *Gustafson* limits Section 12(a)(2)'s remedy to public offerings.  *See supra*, at Part I.A.  Without a viable underlying claim, the Section 15 claims must be dismissed.  *Cooperman v. Individual, Inc.*, 171 F.3d 43, 52 (1st Cir. 1999).

### B.   Plaintiffs Fail to Allege that Defendants Kane, OAM and OpCo Actually Exercised Control over the OGR Fund.

Even if the Complaint had set forth a viable Section 12(a)(2) claim, Plaintiffs' allegations fail to adequately set forth facts alleging <u>actual</u> control over the OGR Fund by Defendants Kane, OAM and OpCo.  As this Court recently noted, control "requires that the alleged controlling

---

[11] The Oppenheimer Defendants and Kane further refer the court to the statute of limitations argument in Defendant Williamson's Motion to Dismiss, that portion of which is hereby incorporated by reference.

[12] "Section 20(a) of the Exchange Act and § 15 of the Securities Act are analogous, and the two provisions are interpreted in the same manner and use the same test for control person liability."  *In re Tyco Intern., Ltd.*, No. Civ. A. 04-cv-1336-PB, 2007 WL 1687775, *8 (D. N.H. June 11, 2007) (citing *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 nn.5-7 (10th Cir.1998) & *Farley v. Henson*, 11 F.3d 827, 835 (8th Cir.1993)).

A/75117720.4

person **actually exercise control over the violator**." *Novell*, 2012 WL 458500 at *5 (emphasis added). *See also Aldridge*, 284 F.3d at 85 (noting that allegations that defendants had "some potential ability to control" is insufficient "[i]n the absence of some indicia of the **exercise** of control over the entity primarily liable") (emphasis in original).

The Complaint fails to set forth any plausible factual allegation that Kane, OAM and OpCo actually exercised any control over the OGR Fund. OGR is a limited partnership. OAIM -- not Kane, OAM or OpCo -- is the Fund's general partner. *See* Compl. ¶ 20; PPM, at 5. The LPA expressly provides that "[t]he overall management and control of the business and affairs of the Partnership shall be vested exclusively in the General Partner." Onshore LPA, § 5.1 (emphasis added); Offshore LPA, § 4.1 (same). *See also id*. at § 1.9.3 ("**Management and Control by the General Partner**. The Limited Partners shall take no part in the control or management of the business or affairs of the Partnership[.]") (emphasis in original). "The General Partner, in its discretion, . . . value[s] the assets of the Fund" and has "discretion to use other valuation methods or to engage an independent valuation consultant." PPM, at 51. None of the substantive factual allegations in the complaint provide any facts suggesting that Kane, OAM, or OpCo either controlled the OGR Fund, or were responsible for the alleged misstatements at issue. *See* Compl. ¶¶ 57-91; *supra*, at Part I.D. Even if the court generously were to assume that these Defendants' positions vested in them the potential to exercise control, the Complaint would still fall short of the minimum requirements to state a claim for relief for control person liability. *See Aldridge*, 284 F.3d at 85.

Plaintiffs' threadbare, conclusory statements that OAM and OpCo "were able to and did control the contents of the Solicitation Documents during the Marketing Period," Compl. ¶ 23, and that Kane was "able to and did control the contents of the Solicitation Documents," Compl. ¶

27, do not save their Section 15 claims.  Indeed, *Novell* rejected remarkably similar allegations as "conclusory and insufficient to meet *Iqbal's* pleading standard."  *Novell*, 2012 WL 458500, at *6.  Like Plaintiffs here, the investors in *Novell* alleged that certain parties had "direct supervisory control" over the allegedly misleading proxy, and had "access to copies of the proxy, the ability to prevent issuance of or correct allegedly misleading statements."  *Id.*. *5-*6.  This Court, however, rejected these allegations as "too bare to pass muster."  *Id.* at *6.  The same can be said of Plaintiffs' nearly identical allegations here.  The Section 15 claims against Kane, OAM and OpCo therefore must be dismissed.

## CONCLUSION

For the foregoing reasons, Kane and the Oppenheimer Defendants respectfully request that this Court allow their motion to dismiss all claims asserted in the Complaint, with prejudice.

Respectfully submitted,

/s/ Michael Blanchard
Michael Blanchard (BBO) #636860
Patrick Strawbridge (BBO) #678274
BINGHAM MCCUTCHEN, LLP
One Federal Street
Boston, MA  02110
(617) 951-8000
michael.blanchard@bingham.com
patrick.strawbridge@bingham.com

Dated:  August 31, 2012

- 20 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 31, 2012.

/s/ Michael Blanchard
Michael Blanchard

A/75117720.4