UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BROCKTON RETIREMENT BOARD and, QUINCY RETIREMENT BOARD, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>v.<br><br>OPPENHEIMER GLOBAL RESOURCE PRIVATE EQUITY FUND I, L.P., OPPENHEIMER ASSET MANAGEMENT, INC., OPPENHEIMER ALTERNATIVE INVESTMENT MANAGEMENT, LLC, OPPENHEIMER & CO. INC., BRIAN WILLIAMSON AND PATRICK KANE,<br><br>     Defendants. | CIVIL ACTION<br>NO. 1:12-10552-RWZ<br><br><br>**ORAL ARGUMENT<br>REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BRIAN WILLIAMSON'S MOTION TO DISMISS THE AMENDED COMPLAINT

Owen C.J. Foster (BBO # 670199)
DECHERT LLP
200 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 728-7100 (phone)
(617) 426-6567 (fax)
owen.foster@dechert.com

Andrew J. Levander *(admitted pro hac vice)*
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3683
Fax: (212) 698-0483
andrew.levander@dechert.com

Cheryl A. Krause *(admitted pro hac vice)*
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Phone: (215) 994-2139
Fax: (215) 655-2139
cheryl.krause@dechert.com

*Attorneys for Defendant Brian Williamson*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

      A.    Overview Of The Fund ................................................................................... 2

      B.    Overview Of The Alleged Misrepresentations At Issue ................................. 4

      C.    Plaintiffs' Limited And Conclusory Factual Allegations As To Williamson ......... 5

ARGUMENT ................................................................................................................................ 5

I.    THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 12 CLAIM BECAUSE SECTION 12 DOES NOT APPLY TO PRIVATE OFFERINGS ................................... 5

II.   THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 12 CLAIM FOR ABSENCE OF LOSS CAUSATION .............................................................................. 6

III.  THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 12 CLAIM BECAUSE IT IS TIME-BARRED ............................................................................................................ 7

IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR "CONTROL PERSON" LIABILITY AGAINST WILLIAMSON ................................................................................................ 8

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002) .................................................................................. 9

*Cook v. Avien, Inc.*,
  573 F.2d 685 (1st Cir. 1978) ................................................................................ 8

*Cooperativa Ahorro y Credito Aguada v. Kidder, Peabody & Co.*,
  129 F.3d 222 (1st Cir. 1997) ................................................................................ 8

*Cooperman v. Individual, Inc.*,
  171 F.3d 43 (1st Cir. 1999) .................................................................................. 9

*Cooperman v. Individual, Inc.*,
  No. 96-12272, 1998 WL 953726 (D. Mass. May 27, 1998), *aff'd*, 171 F.3d 43
  (1st Cir. 1999) ................................................................................................. 2, 6

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ............................................................................................ 6

*Giragosian v. Ryan*,
  547 F.3d 59 (1st Cir. 2008) .................................................................................. 3

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995) ...................................................................................... 2, 5, 6

*In re Cytyc Corp. Sec. Litig.*,
  No. 02-12399, 2005 WL 3801468 (D. Mass. Mar. 2, 2005) ............................... 3

*In re Merrill Lynch & Co.*,
  273 F. Supp. 2d 351 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005) ......... 8

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003) ................................................................ 6

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
  434 F. Supp. 2d 233 (S.D.N.Y. 2006) ................................................................ 6

*In re Novell, Inc. S'holder Litig.*,
  No. 10-12076, 2012 WL 458500 (D. Mass. Feb. 10, 2012) (Zobel, J.) ............. 9

*Larson v. JPMorgan Chase & Co.*,
  530 F.3d 578 (7th Cir. 2008) ............................................................................... 7

*Maggio v. Gerard Freezer & Ice Co.*,
  824 F.2d 123 (1st Cir. 1987) ............................................................................... 8

*Maldonado v. Dominguez*,
   137 F.3d 1 (1st Cir. 1998)..........................................................................................2, 6

*Merck & Co. v. Reynolds*,
   __ U.S. __, 130 S. Ct. 1784 (2010)..................................................................................7

*Salois v. Dime Sav. Bank of N.Y., FSB*,
   128 F.3d 20 (1st Cir. 1997)..............................................................................................8

*Sec. & Exch. Comm'n v. First Jersey Sec., Inc.*
   101 F.3d 1450 (2d Cir. 1996)..........................................................................................9

*Stumpf v. Garvey*,
   No. 03-1352, 2006 WL 39237 (D.N.H. Jan. 6, 2006) ....................................................6

*Whirlpool Fin. Corp. v. GN Holdings, Inc.*,
   67 F.3d 605 (7th Cir. 1995) ............................................................................................7

### STATUTES

15 U.S.C. § 77l............................................................................................................. *passim*

15 U.S.C. § 77m.......................................................................................................................7

15 U.S.C. § 77o....................................................................................................................2, 9

15 U.S.C. § 77d(2) ...................................................................................................................6

15 U.S.C. § 78u-4(b)(4) ........................................................................................................6-7

### RULES

Fed. R. Civ. P. 12(b)(6)............................................................................................................1

Defendant Brian Williamson ("Williamson") respectfully submits this Memorandum Of Law In Support Of His Motion To Dismiss Plaintiffs' Amended Complaint ("Complaint" or "Compl.") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Plaintiffs are sophisticated institutional investors who purchased limited partnership interests in Defendant Oppenheimer Global Resource Private Equity Fund I, L.P. ("OGR," or the "Fund"). At the heart of this litigation is one of OGR's holdings, its investment in S.C. Fondul Proprietatea SA ("Fondul") through a co-investment vehicle, Cartesian Investors-A, LLC ("Cartesian"). Plaintiffs allege that certain marketing materials distributed by OGR violated Section 12 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77l, by misrepresenting (i) a valuation of Fondul and (ii) the source of that valuation. Defendants allegedly made those misrepresentations in order to attract new investors to purchase partnership interests in the Fund. Because the other defendants in this matter are contemporaneously filing their own motion to dismiss the Complaint, which defendant Williamson joins in and incorporates herein by reference, this motion endeavors to avoid needlessly burdening the Court with duplicative arguments. This memorandum of law focuses on additional grounds warranting dismissal including the statute of limitations and Plaintiffs' failure to adequately plead their control person claim as to defendant Williamson. Accordingly, the Court should dismiss the Complaint as to Williamson on the following grounds.

First, it is well-settled that Section 12 of the Securities Act does not apply to private offerings and because the Complaint acknowledges that the OGR shares were "offered privately"

---

[1] The exhibits cited in this memorandum of law are annexed to the accompanying Declaration Of Owen C.J. Foster In Support Of Defendant Brian Williamson's Motion To Dismiss the Amended Complaint ("Foster Decl." or "Foster Declaration"), or the Declaration of Patrick Strawbridge ("Strawbridge Decl." or "Strawbridge Declaration").

(Compl. ¶ 47), Plaintiffs' Section 12 claim must be dismissed as a matter of law. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 584 (1995); *Maldonado v. Dominguez*, 137 F.3d 1, 8-9 (1st Cir. 1998); *Cooperman v. Individual, Inc.*, No. 96-12272, 1998 WL 953726, at *5 (D. Mass. May 27, 1998) (noting that "the Supreme Court conclusively decided that section 12(2) applies exclusively to initial public offerings" (citation omitted)), *aff'd*, 171 F.3d 43 (1st Cir. 1999).

Second, because Plaintiffs cannot demonstrate loss causation -- i.e., that the value of their OGR limited partnership units declined or that the Fund has suffered a loss on its Fondul investment -- their Section 12 claim should be dismissed as a matter of law.

Third, Plaintiffs' Section 12 claim is barred by the applicable one-year statute of limitations because Plaintiffs should have discovered the facts underlying their alleged claims against Defendants by no later than January 25, 2011 -- more than a year before they filed their Complaint on March 26, 2012.

Fourth, Plaintiffs' cursory allegations as to Williamson fail to support a "control person" claim under Section 15 of the Securities Act, 15 U.S.C. § 77o, because Plaintiffs have not stated a primary violation under Section 12 and have not alleged that Williamson had actual control or was a culpable participant.

For these reasons and those set forth below, Plaintiffs' claims against Williamson lack any merit and should be dismissed in their entirety.

## STATEMENT OF FACTS

### A. Overview Of The Fund

OGR is a "closed-end" private equity limited partnership, which functions as a global "fund-of-funds" that invests in limited partnership interests and co-investments. Compl. ¶¶ 2, 48. Oppenheimer Alternative Investment Management, LLC ("OAIM") manages the Fund pursuant to limited partnership agreements ("LPAs"). Since 2008, the Fund has sold limited

partnership interests in private offerings to qualified investors pursuant to private placement memoranda ("PPMs") that disclosed the material terms and risks of investments with the Fund. Strawbridge Decl., Ex. C ("July 2008 PPM"), at 56-69.[2]

In June 2008, the Fund purchased approximately 27.7 million shares of Fondul through Cartesian. Compl. ¶ 53. Through Cartesian, OGR increased its holdings in Fondul in 2010 by purchasing approximately 15.8 million shares for $2.6 million. *Id.* ¶ 61. The Cartesian investment vehicle was established to allow three unrelated investors to each purchase shares of Fondul as co-investors: OGR, Cartesian Capital Group, LLC ("Cartesian Capital"), and the DeVos Family Office ("RDV"). *See id.* ¶ 58 (noting OGR valuation independently derived without input from the "co-sponsor of this transaction, Cartesian Capital"); *id.* ¶ 60 (identifying the "DeVos Family Office" as "another investor in Cartesian").

Pursuant to the July 2008 PPM, OAIM had "sole discretion" to "value the assets of the Fund based upon available relevant information." Strawbridge Decl., Ex. C, at 51. Fondul was not publicly listed until January 25, 2011. Compl. ¶ 79.

The PPMs warned that investors "should be aware that *uncertain valuations* as to the assets held by the Fund *could adversely impact the returns of the Fund.*" Strawbridge Decl., Ex. C, at 65 (emphasis added). The PPMs further advised that the Fund's investments *"will be difficult to value because it may be relatively difficult for the fund to obtain reliable valuation information . . . . Prospective investors should be aware that uncertain valuations as to the assets held by the Fund could adversely impact the returns of the Fund."* *Id.* (emphasis added).

---

[2] This Court may properly consider documents referenced in or relied on by the Plaintiffs in framing their Complaint, including the Solicitation Documents and quarterly reports. *See Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (on a motion to dismiss, a district court may consider, *inter alia*, documents incorporated by reference in the complaint). The Court may also take judicial notice of stock prices. *See In re Cytyc Corp. Sec. Litig.*, No. 02-12399, 2005 WL 3801468, at *13 n.35 (D. Mass. Mar. 2, 2005).

Because of the significant risks associated with the Fund, investors were required to meet stringent standards of sophistication in order to qualify as limited partners.[3] The PPMs cautioned that an investment in the Fund would be "suitable only for sophisticated investors who fully comprehend the risks of an investment in the Fund." *Id.* at 56.

Plaintiffs qualified as sophisticated investors and invested $5.0 and $7.0 million in the Fund. Compl. ¶¶ 16-17. Plaintiffs signed subscription agreements with the Fund representing that they are sophisticated investors who understood the risks of investing in the Fund. Strawbridge Decl., Ex. C, at 56; *id.*, Exs. F, G, at § 2.4. OGR's "offer of Units to the offeree is made solely pursuant to this Memorandum and this Memorandum supersedes any other information that may have been furnished to the offeree respecting an investment in Units prior to delivery of this Memorandum." Strawbridge Decl., Ex. C, at 65.

### B. Overview Of The Alleged Misrepresentations At Issue

On October 7, 2009, Defendants distributed a report to current investors that showed that Cartesian had an internal rate of return ("IRR") of -1% (the "Q2 2009 Report"). Compl. ¶ 6. The overall IRR of the Fund was listed at -6.3%. *Id.* After the Q2 2009 Report was distributed, OAIM updated its valuation approach pursuant to its authority under the PPMs and LPAs and issued an updated Q2 2009 PowerPoint (the "PowerPoint") that valued the Cartesian holdings at a net asset value ("NAV") of 1 RON, which resulted in a 67.0% IRR. *Id.* ¶¶ 7-8.

As alleged in the Complaint, OAIM continued to value Cartesian shares at 1 RON in three subsequent reports: the January 5, 2010 Q3 2009 Report (*id.* ¶ 81); the June 2, 2010 Q4 2009 Report (*id.* ¶ 84); and the July 21, 2010 Q1 2010 Report (*id.* ¶ 86) (collectively with the

---

[3] For example, before they could be permitted to invest in the Fund, Plaintiffs needed to establish that they were "accredited investors" within the meaning of Regulation D promulgated under Section 4(2) of the Securities Act of 1933 and "qualified purchasers" as defined in Section 2(a)(51) of the Investment Company Act of 1940, as amended. *Id.* at 72.

PowerPoint, the "Marketing Materials"). On October 8, 2010, the Fund issued its Q2 2010 Report to its investors, which stated the IRR of the Cartesian assets had dropped to 27.9%. Foster Decl., Ex. A, at 2 of appended PowerPoint. Plaintiffs allege that the Marketing Materials contained two misrepresentations: (1) that Fondul had a NAV of 1 RON (Compl. ¶¶ 76, 80, 81, 83, 85, 88), and (2) that the valuations of Fund assets were "based 'on the underlying managers' estimated values . . . ." *Id.* ¶¶ 80, 82, 84, 86.

### C. Plaintiffs' Limited And Conclusory Factual Allegations As To Williamson

According to Plaintiffs, Mr. Williamson, as an executive officer of Oppenheimer Asset Management, Inc. ("OAM"), "had direct knowledge of, and access to, undisclosed information" about the value of the Fund's holdings, specifically relating to the "true value" of the Cartesian assets. *Id.* ¶ 24. Plaintiffs allege that Defendants revised Fondul's valuation in order to solicit investments. *Id.* ¶ 55. As further alleged by Plaintiffs, Williamson explained the change in Fondul's valuation in a memorandum: "Beginning in Q3 2009, [the Fund] began using a valuation methodology for Fondul which is based upon the face value of Fondul's shares" which was "independently derived by the OGR team . . . ." *Id.* ¶ 58. Plaintiffs also allege that "at least some" members of the OGR team disagreed "with the change in valuation methodology." *Id.* ¶¶ 62-63. Plaintiffs, however, do not allege that Williamson played a role in Defendants' purported misrepresentation concerning the source of the valuations.

### ARGUMENT

### I. THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 12 CLAIM BECAUSE SECTION 12 DOES NOT APPLY TO PRIVATE OFFERINGS

In *Gustafson v. Alloyd Co.*, the Supreme Court interpreted the scope of civil liability under Section 12(a)(2) of the Securities Act and held that liability pursuant to Section 12(a)(2) is limited to misrepresentations made in prospectuses that are distributed as part of a public

offering and does not extend to private offerings. 513 U.S. at 584. The First Circuit has acknowledged that *Gustafson* "conclusively decided that section 12(2) applies exclusively to 'initial public offerings'" and held that courts must dismiss Section 12(a)(2) claims asserted in connection with private offerings. *Maldonado*, 137 F.3d at 8; *Cooperman*, 1998 WL 953726, at *5 (noting that "the Supreme Court conclusively decided that section 12(2) applies exclusively to initial public offerings" (citation omitted)). Moreover, the purported misrepresentations on which Plaintiffs' action is predicated appear in the Marketing Materials, none of which are a "prospectus." Because it is indisputable that the offering at issue here was a "private offering" exempt from registration under Section 4(2) of the Securities Act, (Compl. ¶ 47), Plaintiffs' claim under Section 12(a)(2) fails as a matter of law.[4]

## II. THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 12 CLAIM FOR ABSENCE OF LOSS CAUSATION

Section 12 limits a plaintiff's recovery to the loss in value of its securities that was actually caused by the alleged misrepresentations.[5] *See* 15 U.S.C. § 77l(b). If the alleged misrepresentations, however, did not cause any loss in value, Plaintiffs are statutorily barred from asserting claims under Section 12 for failure to show "loss causation." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (failure to demonstrate that the alleged misrepresentations "caused the loss for which the plaintiff seeks to recover" bars claim (quoting 15 U.S.C. § 78u-

---

[4] For the convenience of the Court and to avoid needless repetition with respect to the applicability of Section 12(a)(2) to private offerings, Mr. Williamson incorporates by reference Points I.A-B of the Memorandum Of Law In Support Of Oppenheimer Defendants' And Patrick Kane's Motion To Dismiss Amended Complaint, filed on August 31, 2012 (the "Oppenheimer Motion").

[5] While loss causation is an affirmative defense, it may be raised on a motion to dismiss where a plaintiff's failure to plead loss causation is apparent on the face of the complaint. *See In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006) (dismissing for failure to plead loss causation); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 253 (S.D.N.Y. 2003) (same); *Stumpf v. Garvey*, No. 03-1352, 2006 WL 39237, at *1 (D.N.H. Jan. 6, 2006) (noting that "the affirmative defense of no loss causation is readily established on the face of the complaint and it is appropriate to dismiss the looting claim on this basis").

4(b)(4))). Here, Plaintiffs have not alleged either the price they paid for each OGR share, what those shares are now worth, or any other facts that would establish that Defendants' purported misrepresentations actually caused their losses. Having failed to allege that they suffered any loss, Plaintiffs' Section 12 claim should be dismissed.[6]

## III. THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 12 CLAIM BECAUSE IT IS TIME-BARRED

The Complaint should be dismissed outright because Plaintiffs' claim is barred by the applicable statute of limitations. Section 13 of the Securities Act provides that "[n]o action shall be maintained to enforce any liability created under section [12(a)(2)] unless brought within one year after the discovery of the untrue statement or the omission, or *after such discovery should have been made by the exercise of reasonable diligence . . . .*" 15 U.S.C. § 77m (emphasis added). Accordingly, a plaintiff's cause of action begins to accrue under Section 12(a)(2) of the Securities Act when he is aware of, or should have discovered, facts constituting the alleged violation. *Merck & Co. v. Reynolds*, __ U.S. __, 130 S. Ct. 1784, 1798 (2010).

Here, the Court should dismiss Plaintiffs' Section 12 claim, initially asserted on March 26, 2012, because Plaintiffs should have discovered the facts underlying their alleged claims by January 25, 2011 at the latest as a result of Fondul's public listing on the Bucharest Stock Exchange. *See* Compl. ¶ 64 at 21, 23; *id.* ¶ 79.[7] Specifically, upon its listing on that date,

---

[6] The Complaint should be dismissed for failure to plead loss causation for the additional reasons set forth in Point I.C of the Oppenheimer Motion, which is incorporated by reference herein.

[7] It has long been recognized that "[a] reasonable investor is presumed to have information available in the public domain . . . ." *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 610 (7th Cir. 1995); *Larson v. JPMorgan Chase & Co.*, 530 F.3d 578, 581 (7th Cir. 2008) (noting that "a large, sophisticated investor with a $6 million claim" is "not some hapless individual"). Courts "routinely dismiss securities fraud claims on statute of limitations grounds at the pleading stage" where the facts necessary to trigger accrual of a cause of action are apparent from the face of the complaint, the documents cited therein, and other public documents. *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 378-79 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005); *see also Salois v. Dime Sav. Bank of N.Y., FSB*, 128 F.3d 20, 26 (1st Cir. 1997) (affirming dismissal on statute of limitations grounds); *Maggio v.*

Fondul traded at 0.6495 RON, significantly below the 1 RON valuation ascribed by OAIM in the Marketing Materials. *See* Foster Decl., Ex. B (stating that Fondul traded at 0.6495 RON on January 25, 2011); *see also Cooperativa Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 129 F.3d 222, 225 (1st Cir. 1997) (finding that "[n]otwithstanding that bond prices commonly fluctuate, the high interest rates coupled with the drastic short-term decline in value ought to have suggested to a reasonable investor the *possibility* that [defendant] had not accurately described the investment" (emphasis in original)).[8]

Because Plaintiffs should have discovered the factual basis of their claims more than a year before they filed their Complaint and have not pleaded a single fact establishing an inference that they conducted reasonable diligence to ascertain the basis of their purported claim, Plaintiffs' claim under Section 12(a)(2) of the Securities Act is time-barred. *Cook v. Avien, Inc.*, 573 F.2d 685, 696 (1st Cir. 1978) (affirming dismissal on statute of limitations grounds).[9]

## IV.     PLAINTIFFS FAIL TO STATE A CLAIM FOR "CONTROL PERSON" LIABILITY AGAINST WILLIAMSON

In order for "control person" liability under Section 15 to attach, the plaintiffs must allege (1) an underlying violation by the controlled person or entity and (2) that the defendants controlled the violator. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 84-85 (1st Cir. 2002); *In*

---

*Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987) (statute of limitations issues may be resolved "as a matter of law where, as here, the underlying facts are admitted or undisputed").

[8]     Even before Fondul's public listing Plaintiffs were on notice of the facts underlying their alleged claims by virtue of the investment update they received in October 2010 informing them that the IRR for Cartesian dropped from 67%, as of June 30, 2009, to 27.9%, i.e., less than *half* of the internal rate of return in the Q2 2009 marketing materials. *Compare* Compl. ¶ 8 (alleging Defendants reported a 67% Cartesian IRR as of June 30, 2009), *with* Foster Decl., Ex. A, at 2 of appended PowerPoint (stating a 27.9% IRR for Cartesian as of Q2 2010).

[9]     The Complaint should be dismissed under the statute of limitations for the additional reasons set forth in Point I.E. of the Oppenheimer Motion, which is incorporated by reference herein.

*re Novell, Inc. S'holder Litig.*, No. 10-12076, 2012 WL 458500, at *5 (D. Mass. Feb. 10, 2012) (Zobel, J.).

Because Plaintiffs have failed to state a primary Section 12(a)(2) violation, their claim for control person liability fails as a matter of law. *Cooperman v. Individual, Inc.*, 171 F.3d 43, 52 (1st Cir. 1999). Plaintiffs' claim also fails because they fail to adequately allege Williamson had actual control over the purported misrepresentations at issue. *Novell*, 2012 WL 458500, at *5 (control "requires that the alleged controlling person *actually exercise control* over the violator" (citing *Aldridge*, 284 F.3d at 85)). Plaintiffs' conclusory assertion that Williamson "made key decisions with regards to the Fund's valuation of its assets," is legally insufficient to show actual control. Moreover, Plaintiffs do not even attempt to allege that Williamson had actual control over the footnotes regarding the source of valuations. *Novell*, 2012 WL 458500, at *6 (finding similar allegations "conclusory and insufficient to meet *Iqbal's* pleading standard").

Lastly, Plaintiffs' claim fails because they have not alleged beyond conclusory statements that Williamson was "in a meaningful sense [a] culpable participant" in the underlying wrong. *See Aldridge*, 284 F.3d at 85 (citing *Sec. & Exch. Comm'n v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)) (noting that some courts have required plaintiffs to plead culpable participation). Accordingly, the Complaint fails to state a claim for violation of Section 15 as a matter of law.

## CONCLUSION

For all of the foregoing reasons, Williamson's motion to dismiss should be granted in all respects.

Dated: August 31, 2012

/s/ Owen C.J. Foster
Owen C.J. Foster (BBO # 670199)
DECHERT LLP
200 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 728-7100 (phone)
(617) 426-6567 (fax)
owen.foster@dechert.com

Andrew J. Levander *(admitted pro hac vice)*
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3683
Fax: (212) 698-0483
andrew.levander@dechert.com

Cheryl A. Krause *(admitted pro hac vice)*
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Phone: (215) 994-2139
Fax: (215) 655-2139
cheryl.krause@dechert.com

*Attorneys for Defendant Brian Williamson*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 31, 2012.

/s/ Owen C.J. Foster, BBO #670199
owen.foster@dechert.com

14540617