UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10552-RWZ

BROCKTON RETIREMENT BOARD
and QUINCY RETIREMENT BOARD,
individually and on behalf of all others similarly situated

v.

OPPENHEIMER GLOBAL RESOURCE
PRIVATE EQUITY FUND I, L.P. *et al.*

MEMORANDUM OF DECISION

February 28, 2013

ZOBEL, D.J.

The Brockton Retirement Board and the Quincy Retirement Board (collectively "plaintiffs") have invested several million dollars each in Oppenheimer Global Resource Private Equity Fund I, L.P. ("OGR Fund"). Plaintiffs now sue OGR Fund, two of its managing directors, and several of its corporate affiliates (collectively "defendants"), on behalf of a putative class of the fund's investors. They allege actionable misstatements in the materials used to solicit investments in the fund. Defendants move to dismiss for failure to state a claim.

## I. Background

Plaintiffs are two public retirement systems, representing current and former employees of the towns of Brockton and Quincy respectively. Between 2009 and 2010,

plaintiffs invested heavily in OGR Fund, a closed-end fund of private equity funds with a ten-plus year life. The fund was established as a limited partnership; plaintiffs purchased limited partnership units by irrevocable capital commitments. The limited partnership units were sold through private placements, and so were exempt from registration under section 4(2) of the Securities Act of 1933 ("Securities Act") and SEC Regulation D.

In layman's terms, plaintiffs bought shares in OGR Fund by promising to make several million dollars available for the fund's investments. The fund invested that money in other private equity funds, making long-term investments intended to last ten or more years. At some point in the future, OGR Fund will close, liquidate its holdings, and distribute all its profits to its investors. Until then, plaintiffs are locked in. They cannot withdraw any of their invested money or sell their interest in the fund until it closes.

One of the private equity funds in which OGR Fund has invested is called Cartesian Investor-A ("Cartesian"). That fund consists solely of shares in S.C. Fondul Proprietatea SA ("Fondul"), a fund set up by the Romanian government to benefit Romanians whose property was seized by the former Communist regime. As of December 31, 2008, OGR Fund had 41.3% of its capital invested in Cartesian (and thus in Fondul).

Each Fondul share has a nominal par value of one Romanian leu ("RON"). However, Fondul shares have always traded at a fraction of their par value. Between January 2007 and July 2010, the market price per share ranged from about 0.60 to

about 0.10 RON.

In its financial reports, OGR Fund initially estimated the value of its interest in Cartesian by using the market price of Fondul shares. But beginning in October 2009, OGR Fund switched to using the par value of the Fondul shares, a figure substantially higher than the shares' market value. Fondul shares were trading on the market for about 0.25 RON per share in October 2009; by using a par value of 1.00 RON, OGR Fund approximately quadrupled the reported value of its Cartesian holdings. OGR Fund continued to rely on the inflated par value figure to calculate its total asset holdings until at least mid-2010.

Plaintiffs allege that OGR Fund used its inflated figures to aggressively solicit potential investors, misleading them into believing that the fund was showing a profit when in fact it was operating at a loss. They sue all defendants under section 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a)(2), claiming that defendants' solicitation materials contained material misstatements. They also allege that defendants are liable as "controlling persons" under section 15 of the Securities Act, 15 U.S.C. § 77o.

## II. Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all factual allegations contained in the complaint, but not legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). If the complaint's factual allegations fail to state a claim upon which relief can be granted, the complaint must be dismissed.

## III. Analysis

Defendants raise several arguments in support of their motion to dismiss. I begin with the most persuasive: that plaintiffs fail to state a claim because they invested in the OGR Fund through private transactions and so section 12(a)(2) does not apply.

**A. Section 12(a)(2)**

As relevant here, section 12(a)(2) makes liable any person who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact." 15 U.S.C. § 77*l*(a)(2). A "prospectus" for these purposes is "any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security." Id. § 77b(10).

In Gustafson v. Alloyd Co., 513 U.S. 561 (1995), the Supreme Court held that the statutory term "prospectus" refers only to "a document soliciting the public to acquire securities." Id. at 575. That case involved a private transaction in which three sole shareholders sold their entire interests in a privately held corporation to a corporate buyer. The buyer later argued that the private stock purchase agreement was a "prospectus," and so the sellers should be liable under section 12(a)(2) for material misstatements therein.

The Court disagreed. It began its analysis by looking to section 10 of the Securities Act, 15 U.S.C. § 77j, which requires every "prospectus" to include "the information contained in the registration statement" for the security being offered or sold. Gustafson, 513 U.S. at 568-69 (quoting 15 U.S.C. § 77j(a)). Section 10 thus implies that a "prospectus" only exists where there is also a registration statement. And

"[b]y and large, only public offerings by an issuer of a security, or by controlling shareholders of an issuer, require the preparation and filing of registration statements." Id. at 569. The private stock purchase at issue obviously was not a public offering, and the buyer conceded that the agreement was not subject to section 10 and was not required to contain the information contained in a registration statement. Since the agreement was not a "prospectus" for purposes of section 10, the Court concluded that it also was not a "prospectus" for purposes of section 12, meaning that the buyer had failed to state a claim under section 12(a)(2).

Following Gustafson, the First Circuit and several other courts of appeals have held that section 12(a)(2) only applies to a prospectus issued in connection with a public offering. See Maldonado v. Dominguez, 137 F.3d 1, 8 (1st Cir. 1998); see also Yung v. Lee, 432 F.3d 142, 149 (2d Cir. 2005); Lewis v. Fresne, 252 F.3d 352, 357-58 (5th Cir. 2001); Whirlpool Fin. Corp. v. GN Holdings, 67 F.3d 605, 609 n.2 (7th Cir. 1995).

In the present case, the complaint alleges that the limited partnership units plaintiffs purchased "were not registered under applicable securities laws and were offered privately pursuant to an exemption from registration under Section 4(2) of the Securities Act of 1933, as amended, Regulation D, promulgated thereunder by the SEC[,] and applicable state securities laws." Docket # 7 ("Am. Compl."), ¶ 47.[1] Because the limited partnership units were purchased through a private placement rather than a

[1] Section 4(2) of the Securities Act, 15 U.S.C. § 77d(a)(2), exempts from registration requirements "transactions by an issuer not involving any public offering." Regulation D implements that statutory exemption, giving more precise guidelines on what qualifies as a "public offering."

public offering, section 12(a)(2) does not apply.

Plaintiffs resist this conclusion, arguing that although the sale of the limited partnership units was not a "public offering" for purposes of section 4(2) and Regulation D, it was nevertheless a "public offering" for purposes of Gustafson. They emphasize that OGR Fund solicited substantial numbers of potential investors, many of whom had no prior relationship with defendants, and that the fund raised substantial amounts of money. To bolster their case, they cite the analysis in Maldonado v. Dominguez, where the First Circuit applied the case-by-case Ralston Purina analysis to decide whether a particular security offering was public or private and so whether section 12(a)(2) applied. See 137 F.3d at 8 (citing SEC v. Ralston Purina Co., 346 U.S. 119 (1953)).

Plaintiffs are mistaken. First, they cite no law for the proposition that "public offering" in section 4(2) means something different from "public offering" in Gustafson. Nor is that proposition persuasive, given the Court's keen reminder in Gustafson itself that the securities laws should be "interpreted as a symmetrical and coherent regulatory scheme, one in which the operative words have a consistent meaning throughout." 513 U.S. at 569.

Second, the analysis in Gustafson turned on the meaning of "prospectus" throughout the Securities Act, including section 10's requirement that every prospectus include the information contained in the registration statement. Here, as in Gustafson, the parties apparently agree that section 10 does not apply; defendants were not required to file a registration statement, and the solicitation materials provided to plaintiffs were not required to include information from a registration statement. The

logic of Gustafson thus applies here just as it did there. Because the solicitation materials were not a "prospectus" covered by section 10, they are not a "prospectus" covered by section 12.[2]

Finally, the analysis in Maldonado is not applicable because that case did not involve an offering within the Regulation D safe harbor. In Maldonado, the parties disputed whether the offering was public or private; the court therefore applied the Ralston Purina analysis to decide that question. See 137 F.3d at 8. Here, on the other hand, the complaint itself already tells us that the securities were sold in a private offering under Regulation D. The number of investors solicited, their prior relationship with the issuer, the information available to investors, and the amount of money raised therefore are not relevant. Because the complaint already establishes that the offering was private under Regulation D, no second layer of Ralston Purina analysis is necessary.

In summary, because the securities at issue here were sold in a private offering under section 4(2) and Regulation D, plaintiffs have failed to state a claim under section 12(a)(2).

**B. Section 15**

Section 15 extends liability to any person who controls another person liable under section 12(a)(2). See 15 U.S.C. §77o(a). In order to state a claim under section 15, plaintiffs must allege an underlying violation of section 11 or section 12. Plumbers'

[2] Gustafson did note that a document might qualify as a "prospectus" under section 12 but not be covered by section 10 if it fell into one of the "explicit and well-defined exemptions" of section 3. 513 U.S. at 569. None of those exemptions apply here.

Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 776 (1st Cir. 2011). Because plaintiffs have failed to state a section 12(a)(2) claim, their section 15 claims fail as well.[3]

## IV. Conclusion

Defendants' motions to dismiss (Docket ## 23 and 26) are ALLOWED. Judgment may enter accordingly.

February 28, 2013
DATE

/s/Rya W. Zobel
RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE

[3] Because plaintiffs' section 12 and section 15 claims must be dismissed for the reasons described above, I need not consider defendants' alternative arguments.